**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| RONALD UNTERSHINE, JULIE VOEKS, MARLENE KANEHL and VESTA BILLS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Case No.: 18-cv-1484 <br><br> **AMENDED CLASS ACTION COMPLAINT** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| ENCORE RECEIVABLE MANAGEMENT INC., | ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Ronald Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Plaintiff Marlene Kanehl is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.     Plaintiff Patrick Bills is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs debts allegedly incurred for personal, family, or household purposes.

8.     Defendant Encore Receivable Management, Inc. ("Encore") is a foreign business corporation with its principal place of business located at 201 East Fourth Street, Cincinnati, Ohio 45202.

9.     Encore does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 S. Bedford Street, Suite 1, Madison, Wisconsin 537030.

10.    Encore is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11.    Encore is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

12.    Encore is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts Related to Plaintiff Untershine*

13.    On or about October 4, 2017, Encore mailed Untershine a debt collection letter regarding an alleged debt owed to "Synchrony Bank." A copy of this letter is attached to this Complaint as Exhibit A.

2

14.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a store-branded credit card which was used exclusively for personal, family, and household purposes, including purchases of household goods from "Blain's Farm & Fleet" stores.

15.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Untershine inserted by computer.

16.     Upon information and belief, Exhibit A is a form debt collection letter, used by Encore to attempt to collect alleged debts.

17.     Upon information and belief, Exhibit A was the first letter Encore sent to Untershine regarding this alleged debt.

18.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment and verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

19.     Exhibit A additionally includes the following representation:

October 04 2017

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | BLAIN'S FARM & FLEET |
| For Account Ending in: | XXXXXXXXXXXX5703 |
| Encore Account #: | ████8531 |
| Total Account Balance: | $981.05 |
| Amount Now Due: | $226.00 |

20.     Exhibit A also includes a payment remittance slip, which contains the following:

3

| Creditor: | **Synchrony Bank** |
|---|---|
| Re: | BLAIN'S FARM & FLEET |
| For Account Ending in: | XXXXXXXXXXX5703 |
| Encore Account #: | ██████8531 |
| Total Account Balance: | $981.05 |
| Amount Now Due: | $226.00 |

21.     <u>Exhibit A</u> thus states that, as of October 4, 2017, the alleged debt had a "Total Account Balance" of $981.05 and an "Amount Now Due" of $226.00.

22.     It is not unusual for debt collectors to attempt to collect only the past due amounts when a credit card is in default but has not been accelerated.  *See, e.g., Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838 (7th Cir. 2007); *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947 (7th Cir. 2004); *Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n.3 (S.D. Ind. 2007).

23.     When collection agencies are collecting on the past due amounts, only, they often refer to this amount as being "Now Due" or the "Current Amount Due" because this is the amount "now due" to the collection agency. *See, e.g.*, *Barnes*, 493 F.3d 838; *Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509 (7th Cir. 2004).

24.     The unsophisticated consumer would understand the phrase "Amount Now Due" to refer to the past due amount.

25.     Upon information and belief, Untershine had previously received correspondence from Synchrony Bank, the creditor of Untershine's alleged debt, which used the phrase "Amount Now Due" to refer exclusively to the past due amount.

26.     The "Amount Now Due" of $226.00 listed by <u>Exhibit A</u> is not the past due amount of Untershine's alleged debt as of the date of the letter. Instead the amount listed represents the "minimum payment due" at close of the current billing cycle. The "minimum payment due" is the

4

amount past due plus the consumer's monthly minimum payment, which is not due to the creditor until the end of the billing cycle.

27.     As of the date of Exhibit A, the actual past due amount of Untershine's alleged debt was $154.00.

28.     As of the date of Exhibit B, the remaining $72.00 portion of Untershine's alleged debt was not yet due. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'").

29.     The due date for the remaining $72.00 portion of Untershine's alleged debt was October 25, 2017, several weeks after the date of Exhibit A.

30.     Exhibit A does not state the due date when the entire amount listed as the "Amount Now Due" becomes due.

31.     By listing the "Amount Now Due" as $226.00, Exhibit A therefore overstates the actual amount which is due to Encore and/or the creditor as of the date of the letter, and such representations are false, deceptive, and misleading to the unsophisticated consumer.

32.     Additionally, by listing the "Amount Now Due" as $226.00, Exhibit A includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of Untershine's alleged debt – namely the due date of the minimum monthly payment.

33.     Moreover, Exhibit A also includes the following representation:

The above referenced account has been referred to our office for collection. Previous attempts have been made by the creditor to obtain payment of this debt. As of this date, those attempts have not been successful.

Note: As of the date of this letter, your Total Account Balance is $981.05 of which $226.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement. For further information, call or write us.

34.     Exhibit A also contains both the "Total Account Balance" and the "Amount Now Due" on the remittance slip.

35.     By stating "Your Total Account Balance … on the day you pay may be greater than the amount listed above …" and including both the "Total Account Balance" and the "Amount Now Due" on the remittance slip, Exhibit A equivocates as to the amount of the debt the letter is seeking to collect.

36.     Because Exhibit A equivocates as to the amount of the debt it is seeking to collect, the unsophisticated consumer would be confused as to whether Encore sought to collect the "Total Account Balance" or merely the "Amount Now Due."

37.     The FDCPA requires that, within five days of the initial communication to a consumer regarding an alleged, a debt collector must clearly state the amount of the debt. 15 U.S.C. 1692g(a)(2); *Chuway*, 362 F.3d at 947-48 ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it.").

38.     Finally, Exhibit A additionally includes the following representation:

Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below.

39.     The instruction in Exhibit A that the consumer should contact the debt collector by telephone "if payment has already been made" is false, deceptive, and misleading to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice and encourages the consumer to forego their verification rights by communicating disputes orally rather than in writing:

15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

6

> Within five days after the initial communication with a consumer in
> connection with the collection of any debt, a debt collector shall, unless the
> following information is contained in the initial communication or the
> consumer has paid the debt, send the consumer a written notice
> containing—
>
> …
>
> (4) a statement that if the consumer notifies the debt collector in writing
> within the thirty-day period that the debt, or any portion thereof, is disputed,
> the debt collector will obtain verification of the debt or a copy of a judgment
> against the consumer and a copy of such verification or judgment will be
> mailed to the consumer by the debt collector;

40.     To trigger verification rights, a consumer must provide the debt collector with

written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford &*

*Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification

of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of

the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

41.     Upon receiving a *written* dispute from the consumer within the 30-day debt

validation period, the FDCPA requires the debt collector to contact the creditor and obtain

verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day
> period described in subsection (a) that the debt, or any portion thereof, is
> disputed, or that the consumer requests the name and address of the original
> creditor, the debt collector shall cease collection of the debt, or any disputed
> portion thereof, until the debt collector obtains verification of the debt or a
> copy of a judgment, or the name and address of the original creditor, and a
> copy of such verification or judgment, or name and address of the original
> creditor, is mailed to the consumer by the debt collector. Collection
> activities and communications that do not otherwise violate this subchapter
> may continue during the 30-day period referred to in subsection (a) unless
> the consumer has notified the debt collector in writing that the debt, or any
> portion of the debt, is disputed or that the consumer requests the name and
> address of the original creditor. Any collection activities and
> communication during the 30-day period may not overshadow or be

7

> inconsistent with the disclosure of the consumer's right to dispute the debt
> or request the name and address of the original creditor.

42.     Having already paid the debt is one of the most common reasons a consumer would dispute a debt under the FDCPA, and is one of the primary reasons Congress adopted the debt validation procedure specified in 15 U.S.C. 1692g. *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n. 6 ("Congress enacted the FDCPA to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.") (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

43.     <u>Exhibit A</u> confusingly directs the debtor to notify the debt collector about these disputes without informing the consumer that the dispute must be communicated in writing in order to trigger verification. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors,*

8

*Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

44.     Encore's instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute their debts to believe that a consumer who disputes their debt orally is entitled to the same protections as if they had communicated their dispute in writing, when they are not so entitled. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013); *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490 (4th Cir. 2014); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 757-58 (6th Cir. 2018) ("In responding to a debt-collection notice, an oral inquiry or dispute of a debt's validity has different legal consequences than a written one.").

45.     The overshadowing effect is compounded because Encore expressly calls the consumer's attention to it by prefacing it with the word "Note." *See, e.g.*, *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g.").

46.     The overshadowing effect is also compounded by the general confusion caused by the confusion wrought by Encore's use of the phrase "Amount Now Due." *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt

9

collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

47.     Untershine was misled and confused by <u>Exhibit A</u>.

48.     The unsophisticated consumer would be misled and confused by <u>Exhibit A</u>.

*Facts Related to Plaintiff Voeks*

49.     On or about October 30, 2017, Encore mailed Voeks a debt collection letter regarding an alleged debt owed to "Synchrony Bank." A copy of this letter is attached to this Complaint as Exhibit B.

50.     Upon information and belief, the alleged debt referenced in Exhibit B was incurred by use of a credit card which was used exclusively for personal, family, and household purposes, including purchases of medical products.

51.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Untershine inserted by computer.

52.     Upon information and belief, Exhibit B is a form debt collection letter, used by Encore to attempt to collect alleged debts.

53.     Upon information and belief, Exhibit B was the first letter Encore sent to Untershine regarding this alleged debt.

54.     Exhibit B contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

55.     Exhibit B additionally includes the following representation:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | CARECREDIT |
| For Account Ending in: | XXXXXXXXXXX9585 |
| Encore Account #: | ███████3696 |
| Total Account Balance: | $5,263.83 |
| Amount Now Due: | $710.00 |

12

56.     Exhibit B also includes a payment remittance slip, which contains the following:

| Creditor: | **Synchrony Bank** |
|---|---|
| Re: | CARECREDIT |
| For Account Ending in: | XXXXXXXXXXXXX9585 |
| Encore Account #: | ▮▮▮▮▮▮3696 |
| Total Account Balance: | $5,263.83 |
| Amount Now Due: | $710.00 |

57.     Exhibit B thus states that, as of October 30, 2017, the alleged debt had a "Total Account Balance" of $5,263.83 and an "Amount Now Due" of $710.00.

58.     The unsophisticated consumer would understand the phrase "Amount Now Due" to refer to the past due amount.

59.     Upon information and belief, Voeks had previously received correspondence from Synchrony Bank, the creditor of Voeks' alleged debt, which used the phrase "Amount Now Due" to refer exclusively to the past due amount.

60.     The "Amount Now Due" of $710.00 listed by Exhibit B is not the past due amount of Voeks' alleged debt as of the date of the letter. Instead the amount listed represents the "minimum payment due" at close of the current billing cycle. The "minimum payment due" is the amount past due plus the consumer's monthly minimum payment, which is not due to the creditor until the end of the billing period.

61.     As of the date of Exhibit B, the actual past due amount of Voeks' alleged debt was $517.00.

62.     As of the date of Exhibit B, the remaining $193.00 portion of Voeks' alleged debt was not yet due. The due date for the remaining $193.00 portion of Voeks' alleged debt was November 19, 2017, several weeks after the date of Exhibit B.

63.     Exhibit B does not state the due date when the entire amount listed as the "Amount Now Due" becomes due.

13

64.     By listing the "Amount Now Due" as $710.00, Exhibit B therefore overstates the actual amount which is due to Encore and/or the Synchrony Bank as of the date of the letter, and such representations are false, deceptive, and misleading to the unsophisticated consumer.

65.     Additionally, by listing the "Amount Now Due" as $710.00, Exhibit B includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of Voeks' alleged debt – namely the due date of the minimum monthly payment.

66.     Moreover, Exhibit B also includes the following representation:

Note: As of the date of this letter, your Total Account Balance is $5,263.83 of which $710.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement. For further information, call or write us.

67.     By stating "Your Total Account Balance … on the day you pay may be greater than the amount listed above …" and including both the "Total Account Balance" and the "Amount Now Due" on the remittance slip, Exhibit B equivocates as to the amount of the debt the letter is seeking to collect.

68.     Finally, Exhibit B includes the following representation:

Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below.

69.     Exhibit B thus contradicts and overshadows the 15 U.S.C. § 1692g notice.

70.     Plaintiff Voeks was misled and confused by Exhibit B.

71.     The unsophisticated consumer would be misled and confused by Exhibit B.

### *Facts Related to Plaintiff Kanehl*

72.     On or about December 1, 2017, Encore mailed Kanehl a debt collection letter regarding an alleged debt owed to "Synchrony Bank." A copy of this letter is attached to this Complaint as Exhibit C.

14

73. Upon information and belief, the alleged debt referenced in Exhibit C was incurred by use of a store-branded credit card which was used exclusively for personal, family, and household purposes, including purchases of household goods from "Blain's Farm & Fleet" stores.

74. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Kanehl inserted by computer.

75. Upon information and belief, Exhibit C is a form debt collection letter, used by Encore to attempt to collect alleged debts.

76. Upon information and belief, Exhibit C was the first letter Encore sent to Kanehl regarding this alleged debt.

77. Exhibit C contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

78. Exhibit C additionally includes the following representation:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | SYNCHRONY CAR CARE |
| For Account Ending in: | XXXXXXXXXXXX4996 |
| Encore Account #: | ▮▮▮▮▮▮▮7681 |
| Total Account Balance: | $716.99 |
| Amount Now Due: | $164.00 |

79.     Exhibit C also includes a payment remittance slip, which contains the following:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | SYNCHRONY CAR CARE |
| For Account Ending in: | XXXXXXXXXXXXX4996 |
| Encore Account #: | ███████7681 |
| Total Account Balance: | $716.99 |
| Amount Now Due: | $164.00 |

80.     Exhibit C thus states that, as of December 1, 2017, the alleged debt had a "Total Account Balance" of $716.99 and an "Amount Now Due" of $164.00.

81.     The unsophisticated consumer would understand the phrase "Amount Now Due" to refer to the past due amount.

82.     Upon information and belief, Kanehl had previously received correspondence from Synchrony Bank, the creditor of Kanehl's alleged debt, which used the phrase "Amount Now Due" to refer exclusively to the past due amount.

83.     The "Amount Now Due" of $164.00 listed by Exhibit C is not the past due amount of Kanehl's alleged debt as of the date of the letter. Instead the amount listed represents the "minimum payment due" at close of the current billing cycle. The "minimum payment due" is the amount past due plus the consumer's monthly minimum payment, which is not due to the creditor until the end of the billing period.

84.     As of the date of Exhibit C, the actual past due amount of Kanehl's alleged debt was $102.00, and the remaining $62.00 portion of Voeks' alleged debt was not yet due.

85.     The due date for the remaining $62.00 portion of Kanehl's alleged debt was December 22, 2017, several weeks after the date of Exhibit C.

86.     Exhibit C does not state the due date when the entire amount listed as the "Amount Now Due" becomes due.

16

87.     By listing the "Amount Now Due" as $164.00, Exhibit C therefore overstates the actual amount which is due to Encore and/or the Synchrony Bank as of the date of the letter, and such representations are false, deceptive, and misleading to the unsophisticated consumer.

88.     Additionally, by listing the "Amount Now Due" as $164.00, Exhibit C includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of Kanehl's alleged debt – namely the due date of the minimum monthly payment.

89.     Moreover, Exhibit C also includes the following representation:

Note: As of the date of this letter, your Total Account Balance is $716.99 of which $164.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement. For further information, call or write us.

90.     By stating "Your Total Account Balance … on the day you pay may be greater than the amount listed above …" and including both the "Total Account Balance" and the "Amount Now Due" on the remittance slip, Exhibit C equivocates as to the amount of the debt the letter is seeking to collect.

91.     Finally, Exhibit C includes the following representation:

Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below.

92.     Exhibit C thus contradicts and overshadows the 15 U.S.C. § 1692g notice.

93.     Kanehl was misled and confused by Exhibit C.

94.     The unsophisticated consumer would be misled and confused by Exhibit C.

### *Facts Related to Plaintiff Bills*

95.     On or about June 18, 2018, Encore mailed Bills a debt collection letter regarding an alleged debt owed to "Synchrony Bank." A copy of this letter is attached to this Complaint as Exhibit D.

17

96.     Upon information and belief, the alleged debt referenced in Exhibit D was incurred by use of a store-branded credit card which was used exclusively for personal, family, and household purposes, including purchases of household goods from "Blain's Farm & Fleet" stores.

97.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Bills inserted by computer.

98.     Upon information and belief, Exhibit D is a form debt collection letter, used by Encore to attempt to collect alleged debts.

99.     Upon information and belief, Exhibit D was the first letter Encore sent to Bills regarding this alleged debt.

100.    Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

101.    Exhibit D additionally includes the following representation:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | BLAIN'S FARM & FLEET |
| For Account Ending in: | XXXXXXXXXXXXXX8639 |
| Encore Account #: | ████████9484 |
| Total Account Balance: | $1,544.73 |
| Amount Now Due: | $297.00 |

18

102.   Exhibit D also includes a payment remittance slip, which contains the following:

| | |
|---|---|
| **Creditor:** | **Synchrony Bank** |
| Re: | BLAIN'S FARM & FLEET |
| For Account Ending in: | XXXXXXXXXXX8639 |
| Encore Account #: | ████████9484 |
| Total Account Balance: | $1,544.73 |
| Amount Now Due: | $297.00 |

103.   Exhibit D thus states that, as of June 18, 2018, the alleged debt had a "Total Account Balance" of $1,544.73 and an "Amount Now Due" of $297.00.

104.   The unsophisticated consumer would understand the phrase "Amount Now Due" to refer to the past due amount.

105.   Upon information and belief, Bills had previously received correspondence from Synchrony Bank, the creditor of Bills' alleged debt, which used the phrase "Amount Now Due" to refer exclusively to the past due amount.

106.   The "Amount Now Due" of $297.00 listed by Exhibit D is not the past due amount of Bills' alleged debt as of the date of the letter. Instead the amount listed represents the "minimum payment due" at close of the current billing cycle. The "minimum payment due" is the amount past due plus the consumer's monthly minimum payment, which is not due to the creditor until the end of the billing period.

107.   As of the date of Exhibit D, the actual past due amount of Bills' alleged debt was $206.00, and the remaining $91.00 portion of Bills' alleged debt was not yet due.

108.   The due date for the remaining $91.00 portion of Bills' alleged debt was July 7, 2017, several weeks after the date of Exhibit D.

109.   Exhibit D does not state the due date when the entire amount listed as the "Amount Now Due" becomes due.

19

110.    By listing the "Amount Now Due" as $297.00, Exhibit D therefore overstates the actual amount which is due to Encore and/or the Synchrony Bank as of the date of the letter, and such representations are false, deceptive, and misleading to the unsophisticated consumer.

111.    Additionally, by listing the "Amount Now Due" as $297.00, Exhibit D includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of Bills' alleged debt – namely the due date of the minimum monthly payment.

112.    Moreover, Exhibit D also includes the following representation:

Note: As of the date of this letter, your Total Account Balance is $1,544.73 of which $297.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement.  For further information, call or write us.

113.    By stating "Your Total Account Balance … on the day you pay may be greater than the amount listed above …" and including both the "Total Account Balance" and the "Amount Now Due" on the remittance slip, Exhibit D equivocates as to the amount of the debt the letter is seeking to collect.

114.    Finally, Exhibit D includes the following representation:

Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below.

115.    Exhibit D thus contradicts and overshadows the 15 U.S.C. § 1692g notice.

116.    Bills was misled and confused by Exhibit D.

117.    The unsophisticated consumer would be misled and confused by Exhibit D.

### *The FDCPA*

118.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to

protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708,

2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

119.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

120.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

121.    15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

122.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

22

123.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

124.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

125.    15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

126.    The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

    It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for

23

the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

127.    While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

## COUNT I – FDCPA

128.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

129.    By listing the "Amount Now Due" as an amount which includes the next installment payment which is not yet due, <u>Exhibits A-D</u> include false, deceptive, and misleading representations as the character, amount, and legal status of Plaintiffs' alleged debts and the amount necessary to bring their accounts out of default.

130.    By listing the "Amount Now Due" as an amount which includes the next installment payment which is not yet due, <u>Exhibits A-D</u> overstate the amount of the debt owed to Encore and/or the creditor as of the date of the letters.

131.    Defendant thereby violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

24

## COUNT II – FDCPA

132.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

133.    By stating "Your Total Account Balance … on the day you pay may be greater than the amount listed above …" and including both the "Total Account Balance" and the "Amount Now Due" on the remittance slip, Exhibits A-D equivocate as to the amount of the debt the letter is seeking to collect.

134.    Because Exhibits A-D equivocate as to the amount of the debt the letters are seeking to collect, the unsophisticated consumer would be confused as to whether Encore sought to collect the "Total Account Balance" or merely the "Amount Now Due."

135.    Defendant thereby violated § 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT III – FDCPA

136.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

137.    By directing consumers to contact Encore by phone "if payment has already been made," Exhibits A-D contradict and overshadow the validation notice.

138.    By directing consumers to contact Encore by phone "if payment has already been made," Exhibits A-D are misleading to the unsophisticated consumer as to their rights to dispute and/or request verification of their alleged debt.

139.    Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## CLASS ALLEGATIONS

140.    Plaintiffs bring this action on behalf of two classes.

141.    Class I consists of (a) all natural persons in United States, (b) who were sent an initial collection letter in the form represented by <u>Exhibit A, B, C, and/or D</u> to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family, or household purposes (e) between September 21, 2017 and September 21, 2018, (f) that was not returned by the postal service.

142.    Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit A, B, C, and/or D</u> to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family, or household purposes (e) between September 21, 2017 and September 21, 2018, (f) that was not returned by the postal service.

143.    Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

144.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

145.    Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

146.    Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

147.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

26

## JURY DEMAND

148.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and

the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.


Dated: February 6, 2019

                                         **ADEMI & O'REILLY, LLP**

                              By:     /s/ John D. Blythin
                                      John D. Blythin (SBN 1046105)
                                      Mark A. Eldridge (SBN 1089944)
                                      Jesse Fruchter (SBN 1097673)
                                      Ben J. Slatky (SBN 1106892)
                                      3620 East Layton Avenue
                                      Cudahy, WI 53110
                                      (414) 482-8000
                                      (414) 482-8001 (fax)
                                      jblythin@ademilaw.com
                                      meldridge@ademilaw.com
                                      jfruchter@ademilaw.com
                                      bslatky@ademilaw.com

27