# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RONALD UNTERSHINE, et al.,

     Plaintiffs,

  v.         Case No. 18-CV-1484

ENCORE RECEIVABLE MANAGEMENT, INC.,

     Defendant.

## DECISION AND ORDER

### 1. Background

Plaintiffs Ronald Untershine, Julie Voeks, Marlene Kanehl, and Patrick Bills allege that defendant Encore Receivable Management, Inc. sent each of them a collection letter that violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. (ECF No. 15.)

At the top of the letter is a caption listing the creditor as Synchrony Bank; "Re:", followed by a description of the account, such as "Blain's Farm & Fleet" (ECF Nos. 15-1 at 2; 15-4 at 2) or "CARECREDIT" (ECF No. 15-2 at 2); "For Account Ending in:", followed by the last four digits of an account number; the Encore account number; "Total Account Balance", followed by a dollar amount; and "Amount Now Due", followed by a lesser

dollar amount. The body of each letter included the following language, with only the dollar amounts changing:

> Note: As of the date of this letter, your Total Account Balance is $5,263.83 of which $710.00 represents the Amount Now Due. Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement. For further information, call or write us.

(ECF No. 15-2 at 2.)

The letter also included the following: "Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below." (ECF No. 15-1 at 2.) Immediately thereafter was a paragraph setting forth the notice required by 15 U.S.C. § 1692g(a)(3)-(5):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(ECF No. 15-1 at 2.)

At the bottom of each letter was a remittance slip that again included the "Total Account Balance" and the "Amount Now Due." Thus, each letter contained two dollar amounts—the "Total Account Balance" and the "Amount Now Due."

The plaintiffs' amended complaint alleges that the letter included "false, deceptive, and misleading representations as [to] the character, amount, and legal status of Plaintiffs' alleged debts and the amount necessary to bring their accounts out of default" (ECF No. 15, ¶ 129) because, when listing the "Amount Now Due," it included the next installment payment that was not yet due (ECF No. 15, ¶ 130). The plaintiffs further allege that, "[b]y stating 'Your Total Account Balance … on the day you pay may be greater than the amount listed above …' and including both the 'Total Account Balance' and the 'Amount Now Due' on the remittance slip, [the letters] equivocate as to the amount of the debt the letter is seeking to collect." (ECF No. 15, ¶ 133.) Finally, they allege that, "[b]y directing consumers to contact Encore by phone 'if payment has already been made,' [the letters] contradict and overshadow the validation notice." (ECF No. 15, ¶ 137.)

Encore has moved to dismiss the complaint. Briefing on the motion is complete. However, the plaintiffs filed two motions seeking leave to cite additional authority. (ECF Nos. 24; 33.) The court will grant those motions.

## 2. Standing

The judicial power of the United States extends only to "Cases" and "Controversies." Art. III, § 2; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Rooted in this limitation on the judicial power is the doctrine of standing, which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal

wrong." *Spokeo*, 136 S. Ct. at 1547. The Supreme Court has held "that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560 (1992)). The plaintiff has the burden of establishing standing, and at the pleading stage the plaintiff "must 'clearly allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (ellipses omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, at 1548 (quoting *Lujan*, 504 U.S. at 560). A particularized injury is one that affects the plaintiff "in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*. Thus, it must be real and not abstract. *Id*. However, concrete does not necessarily mean merely tangible.

The plaintiffs allege in their amended complaint that "[t]he FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized." (ECF No. 15, ¶ 118.) They then cite district court decisions from within the Seventh Circuit in support of this assertion.

Following the close of briefing on Encore's motion to dismiss, the Court of Appeals for the Seventh Circuit issued its decision *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329 (7th Cir. 2019), which called into question the continued viability of those district court decisions insofar as they supported the plaintiffs' assertion of standing. The court ordered the parties to submit additional briefs on the standing issue.

In *Casillas*, a debt collector's letter allegedly violated the FDCPA by omitting notice that a consumer's dispute of a debt must be in writing. Disagreeing with the decision in *Macy v. GC Services Limited Partnership*, 897 F.3d 747, 751 (6th Cir. 2018), in which the defendant allegedly violated the very same provision as the defendant in *Casillas*, the Seventh Circuit stated that "[i]t is certainly true that the omission put those consumers who sought to dispute the debt at risk of waiving statutory rights. But it created no risk for the plaintiffs in that case, who did not try (and, for that matter, expressed no plans to try) to dispute the debt. It is not enough that the omission risked harming *someone*—it must have risked harm to the *plaintiffs*." *Casillas*, 926 F.3d at 336 (emphasis in original).

The Seventh Circuit found that Casillas lacked standing because she alleged only a "bare procedural violation." *Id.* at 338. "Casillas did not allege that she even read the disclosure, much less that she relied on it to her detriment." *Id.* at 335. Because she had no intention of exercising her rights under the FDCPA, she was not harmed by a lack of information as to those rights. The court stated that "receiving a complete notice would

not have changed anything for Casillas." *Id.* at 335. It summed up its holding tritely, "no harm, no foul." *Id.* at 331.

Untershine and his co-plaintiffs do not allege that they would have done anything differently had the letters not contained the alleged misstatement of the amount owed or the invitation to call if payment had already been made. There is no allegation that the plaintiffs attempted or intended to pay the bill but were thwarted by confusion as to the amount owed. Nor is there an allegation that they recognized the alleged discrepancy between the amount allegedly "Now Due" and the amount that was overdue. Nor do they allege that they were confused as to how to trigger their verification rights under the FDCPA. In fact, they do not allege they even read the letter. Even if a consumer could have been misled or confused, there is no allegation that these plaintiffs were so harmed. Thus, the broad language of *Casillas* suggests that the plaintiffs lack standing to bring their claims.

However, *Casillas* did not overrule any prior Seventh Circuit decision, and the court took pains to distinguish cases that appeared inconsistent. Most significantly, the court distinguished *Robertson v. Allied Sols., LLC*, 902 F.3d 690 (7th Cir. 2018), which held that a job applicant had standing to pursue her claim that the defendant violated the Fair Credit Reporting Act by not providing her with a copy of a background investigation before revoking her offer of employment. The plaintiff in *Robertson* did not allege that anything on the report was inaccurate or that she could have persuaded the defendant to

hire her if she had received it. Nonetheless, the court in *Casillas* characterized Robertson's injury as sufficiently concrete because she was denied the opportunity to even try to change the defendant's opinion.

The court finds both *Robertson* and *Casillas* distinguishable from this case in that both involved claims of omission; the defendants allegedly did not do something they were required to do. That is not the nature of the plaintiffs' claims here. They allege not that they were *un*informed but that they were *mis*informed.

Protecting consumers from misinformation is one of the "concrete interest[s] that Congress sought to protect," *Casillas*, 926 F.3d at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017), cert. denied, 138 S. Ct. 740 (2018)), under the FDCPA, *see, e.g.*, 15 U.S.C. § 1692e, 1692e(2)(A) and (10). If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.

The risk of harm is greatest with respect to the plaintiffs' claims that they were misinformed as to the amount of the debt. Knowing the amount of the debt is "substantive information," *cf. Casillas*, 926 F.3d at 335, central to a consumer being able to intelligently respond to an effort to collect a debt. If informed of an incorrect amount of debt, the consumer is at appreciable risk of any variety of abusive practices Congress sought to curtail with the FDCPA, including not being able to assess whether the debt is valid, paying an amount not authorized under law, or making a partial payment with the mistaken understanding that it will satisfy the debt. Therefore, the court is satisfied that

the plaintiffs have standing to bring the first and second claims in their amended complaint.

The risk of harm is arguably less appreciable with respect to the plaintiffs' "overshadowing" claim. Nonetheless, it is again a claim of misinformation: the plaintiffs allege that the letter suggested that one sort of dispute could be addressed by phone. When a consumer is misinformed about how to exercise his or her rights under the FDCPA, as opposed to merely uninformed of rights she has no intention of exercising, as was the case in *Casillas*, the court finds an appreciable risk of injury. Protecting consumers from misinformation is a significant goal behind the FDCPA. Although it is a close call, the court is satisfied that, in light of current controlling authority, the plaintiffs have standing to pursue their third cause of action on the basis that misinformation created an appreciable risk of harm to the plaintiffs.

## 3. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

In deciding this motion, the court is mindful of the Court of Appeals' caution that "a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because district [court] judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects." *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 367 (7th Cir. 2018) (internal quotation marks omitted) (quoting *McMillan v. Collection Prof'ls., Inc.*, 455 F.3d 754, 759 (7th Cir. 2006)). Thus, "dismissal is only appropriate in 'cases involving statements that plainly, on their face, are not misleading or deceptive.'" *Id*. (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812, 814-15 (7th Cir. 2016)).

## 4. Analysis

### 4.1. "Judge Shopping"

The plaintiffs' first claim is largely identical to that which Judge Joseph of this district rejected earlier this year. That case was prosecuted by plaintiffs' counsel and involved a debt collector also seeking to collect debts on behalf of Synchrony Bank. *Mollberg v. Advanced Call Ctr. Techs., Inc.*, No. 18-CV-1210, 2019 U.S. Dist. LEXIS 9648 (E.D. Wis. Jan. 22, 2019). The plaintiffs contend *Mollberg* was wrongly decided.

Originally, there were three cases raising similar claims, all prosecuted by the same law firm: *Mollberg*, 18-CV-1210 (filed on August 6, 2018); this action, *Untershine*, 18-CV-1484 (filed on September 21, 2018); and *Kanehl*, 18-CV-1784 (filed on November 9, 2018). Judge Joseph dismissed *Mollberg* on January 22, 2019. About two weeks later, on February 6, 2019, the plaintiffs voluntarily dismissed *Kanehl*, which also had also been pending before Judge Joseph. That same day counsel filed an amended complaint in *Untershine*, adding the plaintiffs from *Kanehl*. The net result was to take *Kanehl* away from Judge Joseph and bring those claims in this court.

The defendant argues this dismissal and refiling by way of an amended complaint was improper "judge shopping." Judge Joseph having rejected the plaintiffs' arguments in *Mollberg*, the plaintiffs (or, more accurately, their attorneys) were simply seeking to avoid the same fate before Judge Joseph as experienced by Mollberg.

The court does not tolerate judge shopping, which is expressly prohibited under the court's local rules. Civ. L.R. 41(e) (E.D. Wis.). However, the plaintiffs did nothing improper when they dismissed *Kanehl* and added those plaintiffs to this case. If two related cases are filed in this district, the practice is for them to be handled by the judge to whom the lower-numbered case is pending. If there was an error, it was that counsel should not have filed two actions in the first place, or having done so, should have designated the second (*Kanehl*) as being related to a pending case so that it could be assigned to the same judge. *See* Civ. L.R. 3(b).

Having failed to do so, it was entirely appropriate (and efficient) for counsel to dismiss the later-filed action and consolidate that action into an amended complaint in the first-filed action. The alternative would have been for the court to consolidate the actions (assuming it sua sponte recognized there were two related actions pending or a party filed a motion for consolidation), in which case both actions would be pending before the judge assigned the lower-numbered case—that is, before this court. Only if the plaintiffs had dismissed the lower-numbered case in an effort to proceed in the higher-numbered case would the plaintiffs have done anything improper. Because the lower numbered case, 18-CV-1484, was assigned to this court, it was appropriate for the plaintiffs to dismiss the higher-numbered case, 18-CV-1784, and proceed in this action.

### 4.2. "Amount Now Due"

"Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing … the amount of the debt …." 15 U.S.C. § 1692g(a)(1). Additionally, a debt collector may not make any false representation as to the amount of the debt. 15 U.S.C. § 1692e(2)(A).

The plaintiffs allege that the "Amount Now Due" violates the FDCPA because it includes not just the amount past-due but also the upcoming installment payment that would not be overdue for days or weeks. "By listing the 'Amount Now Due' as an amount

which includes the next installment payment which is not yet due, [the letters] include false, deceptive, and misleading representations as [to] the character, amount, and legal status of Plaintiffs' alleged debts and the amount necessary to bring their accounts out of default." (ECF No. 15, ¶ 129.) The plaintiffs also allege that the letters "overstate the amount of the debt owed to Encore and/or the creditor as of the date of the letters." (ECF No. 15, ¶ 130.)

In support of their position, the plaintiffs point to *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), where the court said that, since the party collecting the debt was a debt collector and not the original creditor, "the 'amount of the debt' must be that owed to the [debt collector], meaning the amount past due.… Only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Thus, the plaintiffs argue that the "Amount Now Due" can include only the amount past due.

But *Barnes* does not stand for the general proposition that the "Amount Now Due" can only include the amount past due. To the extent *Barnes* can be cited for any general proposition, it is that the "amount of the debt" is the amount the debt collector is attempting to collect, and not the amount owed to the original creditor. In *Barnes*, the debt collector was seeking payment just for the amount past due. Thus, in the context of what the debt collector there was seeking, the "Amount Now Due" was the amount past due. But that does not mean that will always be the case.

As Judge Joseph said of the plaintiff in *Mollberg*, the plaintiffs here "appear[] to misunderstand the meaning of 'due.'" *Mollberg*, 2019 U.S. Dist. LEXIS 9648, at *11. They contend that, when an installment loan has not been accelerated, the debt can be divided into only two categories: payments that are overdue, and payments that are not overdue. (*See* ECF No. 22 at 10-14.) They argue that Encore violated various provisions of the FDCPA by including an amount that was not yet overdue in the "Amount Now Due."

But that argument ignores a third category of payments—those that are currently due, albeit not yet overdue. *Cf. Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (noting that a balance "might not yet be due, let alone overdue"). Even an unsophisticated consumer has "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences[,]" *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564-66 (7th Cir. 2004)), and as such would recognize that, in the context of a debt collection letter, the "amount now due" includes sums both due and overdue. To contend otherwise represents the sort of "unrealistic, peculiar, bizarre, and idiosyncratic interpretation[] of collection letters," *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005), that is "much more likely to be arrived at by an enterprising plaintiff's lawyer than by a[n un]sophisticated consumer[.]" *Bazile v. Fin. Sys. of Green Bay*, No. 18-C-1415, 2019 U.S. Dist. LEXIS 25018, at *14 (E.D. Wis. Feb. 15, 2019).

Under the facts of this case, where the debt collector is attempting to collect both a past-due balance and the current payment on an unaccelerated installment contract, the court finds that the "amount of the debt" under 15 U.S.C. § 1692g(a)(1) is the amount the debt collector is attempting to collect from the consumer. *See Mollberg*, 2019 U.S. Dist. LEXIS 9648, at *6 (citing *Wahl v. Midland Credit Mgmt., Inc.*, No. 6-CV-1708, 2008 U.S. Dist. LEXIS 2563, 2008 WL 149962, at *4 (N.D. Ill. 2008), *aff'd* 556 F.3d 643, 646-47 (7th Cir. 2009); *Humes v. Blatt*, 6-CV-985, 2007 U.S. Dist. LEXIS 72344, 2007 WL 2793398, at *3 (S.D. Ind. 2007); *Johnson v. Alltran Educ., LP*, No. 17-CV-6616, 2018 U.S. Dist. LEXIS 76441, 2018 WL 2096374, at *8 (N.D. Ill. 2018)); *cf. Chuway*, 362 F.3d at 946-47 ("The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., requires that any dunning letter by a debt collector as defined by the Act state 'the amount of the debt' that the debt collector is trying to collect."). Therefore, the court finds that, as a matter of law, Encore complied with 15 U.S.C. § 1692g(a)(1) and accurately stated "the amount of the debt."

Nor does the court find the Encore's use of "Amount Now Due" in the letter to be a false representation of the amount of the debt, *see* 15 U.S.C. § 1692e(2)(A), or otherwise plausibly misleading, *see* 15 U.S.C. § 1692e, false, or deceptive, see 15 U.S.C. § 1692e(10). Never did Encore suggest that the "current installment is actually past due" (ECF No. 22 at 9), and an unsophisticated consumer could not read the letter as saying so. In fact, Encore never said any portion of the balance was past due. It identified simply the

amount it was trying to collect, which it described as "due." The FDCPA requires nothing more.

Perhaps it would have been clearer if Encore had explicitly stated that the "Amount Now Due" included both the amount past due and the current monthly payment. *See Whitlow v. FMS, Inc.*, No. 1:13-cv-1507-WTL-MJD, 2014 U.S. Dist. LEXIS 68413, at *6-7 (S.D. Ind. May 19, 2014) ("the Court finds, as a matter of law, that the letters' use of the terms 'balance' and 'total due,' along with the explanation that 'Total Due = Amount Past Due + Current Monthly Payment,' would have been understood by an 'unsophisticated consumer' as defined by the Seventh Circuit as setting forth the amount of the debt (the 'balance') and the 'portion of the balance that the creditor would accept until the next bill arrived' (the 'total due').")). And this is what the Consumer Finance Protection Bureau (CFPB) proposes to do by way of an amendment to applicable regulations. (*See* ECF Nos. 24-1; 25.) However, the FDCPA does not require such differentiation. The very fact that the CFPB seeks to add such a requirement by way of regulation highlights the absence of such a requirement in the statute. If the statute required it, the proposed rule would be unnecessary. Under the FDCPA, a debt collector may state simply the "bottom line" amount it is seeking to collect "without saying where this figure came from." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009); *see also Whitlow*, 2014 U.S. Dist. LEXIS 68413, at *8-9. The plaintiffs and the CFPB might agree on what should be required of debt collectors, but for now no such requirement exists.

In sum, the court concludes as a matter of law that including in the "Amount Now Due" a payment that was due but not yet overdue was not "false, deceptive, or misleading" 15 U.S.C. § 1692e, nor did it otherwise violate 15 U.S.C. §§ 1692e(2)(A) and (10), or 1692(f). Because the statements "plainly, on their face, are not misleading or deceptive," *Ruth v. Triumph P'Ships*, 577 F.3d 790, 800 (7th Cir. 2009), the court will grant Encore's motion to dismiss with respect to count one of the amended complaint.

### 4.3. Equivocation as to Amount of Debt

In count two of the amended complaint the plaintiffs allege that the letters violated the FDCPA because they "equivocate as to the amount of the debt the letters are seeking to collect, [and] the unsophisticated consumer would be confused as to whether Encore sought to collect the 'Total Account Balance' or merely the 'Amount Now Due.'" (ECF No. 15, ¶ 134.)

> That claim has been squarely rejected by the Seventh Circuit:

> We conclude that an unsophisticated consumer, able to make "basic logical deductions and inferences" and to not interpret collection letters "in a bizarre or idiosyncratic fashion," *Pettit*, 211 F.3d at 1060, would understand that the amount of the debt is the "Balance" and that the amount "Now Due" is the portion of the balance that the creditor will accept for the time being until the next bill arrives.

*Olson v. Risk Mgmt. Alts., Inc.*, 366 F.3d 509, 513 (7th Cir. 2004); *see also Reynolds v. Encore Receivable Mgmt.*, Civil Action No. 17-2207 (JMV) (Mf), 2018 U.S. Dist. LEXIS 83902, at *16 (D.N.J. May 18, 2018) (following *Olson* and rejecting claim that Encore's letter was

ambiguous because it "included the overall account balance as well as the current amount due").

No one could read the letters and understand that Encore was attempting to collect any sum other than the "Amount Now Due." The fact that the remittance slip also included both the "Total Account Balance" and "Amount Now Due" does not support a reading that Encore was attempting to collect the "Total Account Balance." There is no plausible violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, or 1692g(a)(1). Because the statements "plainly, on their face, are not misleading or deceptive," *Ruth*, 577 F.3d at 800, the court will grant Encore's motion to dismiss with respect to count two of the amended complaint.

### 4.4. Validation Notice

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of

> such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Each letter includes the following: "Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below." (ECF No. 15, ¶ 38.) Immediately following that sentence is a standard validation notice that includes the information required under 15 U.S.C. § 1692g(a)(3)-(5):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

(ECF No. 15, ¶¶ 18, 54, 77, 100.)

The plaintiffs allege that the letters violate the FDCPA because, "[b]y directing consumers to contact Encore by phone 'if payment has already been made,' [the letters] contradict and overshadow the validation notice." (ECF No. 15, ¶ 137.) They also allege that, "[b]y directing consumers to contact Encore by phone "if payment has already been

made," [the letters] are misleading to the unsophisticated consumer as to their rights to dispute and/or request verification of their alleged debt." (ECF No. 15, ¶ 138.)

"Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g. "'Overshadowing' means obscuring, *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009), or confusing, *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997)." *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 343 (7th Cir. 2018). Thus, "[t]he validation notice required by the FDCPA must be presented in a nonconfusing manner." *Id.* (quoting *Sims v. GC Servs.*, 445 F.3d 959, 963 (7th Cir. 2006)).

In moving to dismiss this claim, Encore notes that the letters contain the statutory validation notice, which "is expressed in the same font, size, and color as the rest of the text in the body of Encore's letters, and there is absolutely no emphasis placed on the option of calling to notify Encore '[i]f payment has already been made.'" (ECF No. 18 at 14.)

But the fact that the letter contains the validation notice obviously does not negate liability. Such is the nature of an overshadowing claim, which is based not on the omission of the notice but on the inclusion of additional language that renders the notice ineffective. The fact that the validation notice was presented in the same font, size, etc., as the other text of the letter is immaterial. The plaintiffs are not making what might be

characterized as a literal or physical overshadowing claim, *see O'Boyle*, 910 F.3d at 343 (citing *Bartlett*, 128 F.3d at 500 (fine print, faint print, or confusing typeface), but are alleging overshadowing by way of confusion.

Encore argues that there can be no confusion because the relevant language inviting the consumer to call if payment has been made never uses words similar to "disputing" or "validity." (ECF No. 18 at 15.) But there are plenty of cases where courts have found plausible overshadowing claims with respect to language that did not include such words. *See, e.g., Maniaci v. Receivable Mgmt. Servs. Corp.*, No. 18-CV-200, 2018 U.S. Dist. LEXIS 109087 (E.D. Wis. June 29, 2018) (finding plausible overshadowing claim regarding letter that said, "If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution."); *O'Chaney v. Shapiro & Kreisman, LLC*, No. 02-C-3866, 2004 U.S. Dist. LEXIS 5116, at *12 (N.D. Ill. Mar. 25, 2004) (finding plaintiffs stated an overshadowing claim regarding phrase "for further information, call (847) 498-9990").

Encore also argues that the language cannot be confusing because informing a debt collector that the debt has been paid is not a "dispute of the debt." (ECF No. 23 at 10, 14.) According to Encore, if a consumer says he has paid the debt, rather than disputing the validity of the debt he is acknowledging that the debt is valid. (ECF No. 23 at 13.)

The court finds a consumer's contention that he paid the debt to readily fall within the plain meaning of a dispute as to the validity of the debt. A consumer who said he has

already paid the debt may be implicitly acknowledging that the debt *was* valid, but he would be very much disputing that the debt *is* valid. In fact, such a contention might be one of the most common disputes of a debt collector's claim. And as the plaintiffs point out, a concern about debt collectors trying to collect on satisfied debts was one of the reasons Congress enacted the FDCPA. (ECF No. 22 at 30 (quoting *Gruber v. Creditors' Prot. Servs.*, No. 12-cv-1243, 2013 U.S. Dist. LEXIS 68379, at *1-2 (E.D. Wis. May 14, 2013))) in turn quoting S. Rep. No. 95-382, at 4 (1977)).) The court finds no basis for concluding that the obligations outlined in 15 U.S.C. § 1692g apply only if the consumer asserts that the debt was *never* valid as opposed to merely *no longer* valid.

Encore's remaining argument is that the court should dismiss the plaintiffs' claim because other courts dismissed identical claims. (ECF Nos. 18 at 15; 23 at 14-15.) In two factually identical cases—same debt collector, same validation notice, and same request to call if payment had already been made—judges in the District of New Jersey granted Encore's motions to dismiss. *Reynolds*, 2018 U.S. Dist. LEXIS 83902; *Rosa v. Encore Receivable Mgmt.*, Civil Action No. 15-2311 (MAS) (TJB), 2016 U.S. Dist. LEXIS 112104 (D.N.J. Aug. 23, 2016).

The plaintiffs argue that these New Jersey cases are inapplicable because, in the Third Circuit, overshadowing is a question of law, whereas in the Seventh Circuit it is a question of fact. (ECF No. 22 at 29-30.) Encore replies, "This distinction is meaningless, though, because dismissal of an overshadowing claim is required in the Seventh Circuit

when 'no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that violates Section 1692g(b).'" (ECF No. 23 at 14 (quoting *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 637 (7th Cir. 2012).)

The court accepts that, when there is no plausible way a letter could be read as violating 15 U.S.C. § 1692g(b), dismissal pursuant to Rule 12(b)(6) is appropriate. *See Zemeckis*, 679 F.3d at 637 (quoting *McMillan*, 455 F.3d at 760). However, the court does not necessarily find *Rosa* (which *Reynolds* followed) persuasive.

The court's conclusion in *Rosa* appears to have been based, in part, on the court's view that "[t]he language at issue instructs the debtor to call to notify the debt collector only if the bill has already been paid and does not appear to be an alternative way to dispute the underlying debt." *Rosa*, 2016 U.S. Dist. LEXIS 112104, at *7. As discussed above, this court disagrees with that premise, at least to the extent that the court was suggesting that an assertion that a debt has been paid is not a dispute as to the validity of the debt.

However, the court does agree that the invitation to call could not be read as suggesting that all manner of disputes will be entertained by phone. The letter is clear that, consistent with 15 U.S.C. § 1692g(a)(4), (5), only if the consumer writes to Encore will Encore "obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification" or "provide you with the name and address of the original creditor if different from the current creditor." (ECF No. 15-1 at 2.) Therefore,

the court finds there is no plausible overshadowing of the notice required under 15 U.S.C. § 1692g(a)(4) and (5).

That leaves the question of whether the letter overshadows the notice required under 15 U.S.C. § 1692g(a)(3), which requires "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." The validation notice in Encore's letter tracks this language, which comes immediately after the invitation to call if the debt has been paid. A consumer could reasonably read those two sentences together and understand that a call might be sufficient to challenge the validity of the debt.

But that reading would constitute a claim under the FDCPA only if a call was *not* sufficient to challenge the validity of the debt. Therefore, the question is whether notice of a dispute over the validity of a debt under 15 U.S.C. § 1692g(a)(3) *must* be in writing. The circuits have split on this question. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 580 n.3 (2010); *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (holding that debt collector did not violate FDCPA by stating that it would presume the debt valid unless consumer disputed debt in writing within 30 days); *Clark v. Absolute Collection Serv.*, 741 F.3d 487, 490-91 (4th Cir. 2014) (finding statutory text clearly did not require notice of disputes be in writing); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284-87 (2d Cir. 2013) (holding that § 1692g(a)(3) did not require such disputes

to be in writing and, therefore, plaintiff stated a claim for violation of the FDCPA regarding letter that said debt collector would presume the debt valid absent a written dispute); *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1080-82 (9th Cir. 2005) (same).

The Court of Appeals for the Seventh Circuit has not addressed the issue, *see Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 501 (7th Cir. 2018), although, as Judge Adelman of this district recognized, the court of appeals' statements regarding other provisions of the FDCPA suggest it would agree with the Second, Fourth, and Ninth Circuits and find that notice of a dispute under 15 U.S.C. § 1692g(a)(3) need *not* be in writing, *see O'Boyle v. GC Servs.*, No. 16-C-1384, 2018 U.S. Dist. LEXIS 82991, at *8 (E.D. Wis. May 17, 2018) (discussing *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018)). District courts within this circuit have come out on both sides. *Jolly v. Shapiro*, 237 F. Supp. 2d 888, 895 (N.D. Ill. 2002) (finding a writing requirement); *Campbell v. Hall*, 624 F. Supp. 2d 991, 1000 (N.D. Ind. 2009) (finding no writing requirement)); *see also O'Boyle*, 2018 U.S. Dist. LEXIS 82991, at *8 (finding no writing requirement); *Smith v. GC Servs. Ltd. P'ship*, No. 1:16-cv-01897-RLY-DML, 2017 U.S. Dist. LEXIS 93710, at *7 (S.D. Ind. June 19, 2017) (discussing split of authority and finding plaintiffs stated a claim under the FDCPA when debt collector's letter said it would presume the debt valid unless disputed in writing).

Having reviewed the relevant authority, the court is persuaded that there is no requirement that a notice of a dispute under § 1692g(a)(3) must be in writing. Most significant in the court's analysis is that Congress omitted any writing requirement in

subsection (3) but included it in subsections (4) and (5), as well as in 15 U.S.C. § 1692g(b). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) (brackets omitted). The court also notes that plaintiffs' counsel previously argued (and Judge Adelman agreed) that § 1692g(a)(3) does not require the dispute to be in writing. *O'Boyle*, 2018 U.S. Dist. LEXIS 82991, at *1. And, finally, the plaintiffs acknowledge that "disputing a debt in writing typically entails more time and expense than a simple telephone call …." (ECF No. 30 at 25.) Thus, requiring disputes to be in writing would arguably undermine a purpose of the statute by making it more complicated and expensive for consumers to resolve what may be simple errors.

In sum, the plaintiff's overshadowing claim set forth in count three of the amended complaint fails to state a claim for which relief may be granted. It is not plausible that an unsophisticated consumer would be misled by Encore's statement, "Note: If payment has already been made, please notify this office at 866-247-1087 or by writing to Encore at the address listed below." The letter was explicit that, if the consumer wished to exercise his right to receive verification of the debt or the identity of the original creditor, he must make this request in writing. Although a consumer could reasonably read the letter as stating that a phone call would be sufficient notice to negate Encore's presumption that

the debt was valid, a phone call *is* sufficient notice under 15 U.S.C. § 1692g(a)(3). Consequently, as a matter of law, overshadowing was impossible.

There is no possibility that an unsophisticated consumer would be misled or confused as to his rights set forth in 15 U.S.C. § 1692g(a)(3)-(5). As a result, the court will grant Encore's motion to dismiss the second amended complaint.

### 4.5. Leave to Amend

Having concluded that the plaintiffs' amended complaint fails to state a claim upon which relief may be granted, the court will grant Encore's motion to dismiss. "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.'" *O'Boyle*, 910 F.3d at 346-47 (quoting *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510 at 519 (7th Cir. 2015)).

The plaintiffs have already amended their complaint once. And they do not seek leave to again amend should the court grant the motion to dismiss. There is absolutely no reason to suspect that the fatal defects the court has identified can be remedied by another amendment. As noted, plaintiffs' counsel have once already unsuccessfully pursued claims regarding a substantively identical debt collection letter. As a result, it seems fair to presume that plaintiffs' counsel have presented all they can muster with this complaint. And the court notes that there were substantive changes between the amended complaint here and the complaint and proposed amended complaint in

*Mollberg,* 18-CV-1210. The plaintiffs added two more counts not alleged in *Mollberg.* Thus, because plaintiffs do not request it, and because the court finds "that any amendment would be futile or otherwise unwarranted," *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004), the court will dismiss the plaintiffs' amended complaint with prejudice.

**IT IS THEREFORE ORDERED** that Encore's motion to dismiss the amended complaint (ECF No. 17) is **granted**. The action is dismissed. The Clerk shall enter judgment in favor of the defendant.

**IT IS FURTHER ORDERED** that the plaintiffs' motions to cite additional authority (ECF Nos. 24; 33) are **granted**.

Dated at Milwaukee, Wisconsin this 9th day of August, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge